UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLUMBIA HOSPITAL AT MEDICAL CITY DALLAS SUBSIDIARY, L.P. d/b/a MEDICAL CITY DALLAS, et al. | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:25-CV-0689-X |
| ANTHEM HEALTH PLANS OF VIRGINIA INC. d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD | § § § § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Anthem Health Plans of Virgina Inc. d/b/a Anthem Blue Cross and Blue Shield's ("Anthem" or "Home Plan") motion to dismiss. (Doc. 27). After reviewing the motion, response, reply, and applicable law, the Court **DENIES** Anthem's motion to dismiss and **ORDERS** the case to arbitration.

## I. Background

This case involves a reimbursement dispute between a group of acute care hospitals in North Texas and a health insurance company over medical care provided to three patients. Plaintiffs Columbia Hospital at Medical City of Dallas Subsidiary, L.P. d/b/a Medical City Dallas d/b/a Medical City Heart and Spine Hospitals and Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P. d/b/a Medical City Fort Worth (collectively, "Medical City") treated patients insured under health plans administered by Anthem. Anthem is a licensee of the Blue Cross Blue Shield

1

Association (Blue Cross) authorized to offer Blue Cross and Blue Shield-branded health plans in Virgina.

Medical City entered into a Hospital Agreement with non-party Blue Cross Blue Shield of Texas ("Blue Cross Texas" or the "Host Plan"). Medical City contends the Agreement applies to patients enrolled in any Blue Cross-branded plan, including those administered by out-of-state licensees such as Anthem, and entitles Medical City to negotiated payment rates for medically necessary services.

For patients insured by out-of-state Blue Cross licensees, Medical City submits claims through the BlueCard Program. Under that program, Medical City submits claims to the Host Plan (Blue Cross Texas) which forwards the claims to the patient's Home Plan (Anthem) for coverage determination. The Home Plan then approves or denies payment, and the Host Plan transmits that decision and any payment to Medical City.

Between 2021 and 2022, Medical City provided care to three Anthem-insured patients. Although the patients' diagnoses and treatments differed, Medical City alleges that all care was medically necessary, it communicated with Anthem through Blue Cross Texas in accordance with BlueCard Program procedures, and Anthem partially paid for one patient's treatment. Anthem ultimately denied reimbursement for the remaining claims, citing lack of medical necessity or failure to obtain preauthorization, which Medical City asserts to be a breach of the patients' plans with Anthem. Anthem did not assert during the internal appeals process that it lacked a contractual obligation to Medical City.

2

Upon admission to Medical City every patient executes Conditions of Admission, assigning their insurance benefits and related rights to Medical City. Medical City asserts standing to sue based on the patients' assignments of benefits.

Medical City seeks $342,007.83 in unpaid reimbursement from Anthem and asserts four claims: breach of contract (Count I), breach of an implied-in-fact contract (Count II), breach of the health plans (Count III), and breach of contract for non-ERISA plans (Count IV). Anthem moves to dismiss Count III under Rule 12(b)(1) for lack of derivative standing; Counts I, II, and IV under Rule 12(b)(6) for failure to state a claim; and, alternatively, seeks to compel arbitration under Rule 12(b)(3).

## II. Legal Standard

### A. 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move for dismissal for "lack of subject matter jurisdiction."[1]  Standing under ERISA § 502 is subject to challenge through Rule 12(b)(1).[2]  A court should address Rule 12(b)(1) motions "before addressing any attack on the merits."[3]

### B. 12(b)(6)

To survive a Rule 12(b)(6) dismissal, a complaint must "state a claim upon which relief can be granted."[4]  The complaint must allege sufficient facts "to state a

---

[1] FED. R. CIV. P. 12(b)(1).

[2] *Lee v. Version Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016).

[3] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[4] FED. R. CIV. P. 12(b)(6).

3

claim to relief that is plausible on its face."[5]  And there must be enough facts for the Court to be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

In its evaluation, the Court construes the complaint liberally in favor of the plaintiff and accepts all well pled facts in the complaint as true.[7]  But conclusory statements or legal conclusions are not credited.[8]

### C. 12(b)(3)

The Fifth Circuit has indicated that a Rule 12(b)(3) motion is "a proper method for seeking dismissal in favor of arbitration."[9]  The Federal Arbitration Act requires district courts to compel arbitration if there is a valid arbitration agreement encompassing the dispute.[10]  In determining whether the parties agreed to arbitrate the dispute, a court must consider: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement.[11]  If an agreement includes a valid delegation clause, then a court may not reach the second step.[12]

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[8] *See Ashcroft*, 556 U.S. at 678.

[9] *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 667 n.2 (5th Cir. 2024).

[10] 9 U.S.C. § 3.

[11] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 530 (5th Cir. 2019).

[12] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016).

### III. Analysis

### A. Medical City plausibly pled derivative standing.

Medical City has plausibly pled that the patients completed a valid assignment of benefits in completing the Conditions of Admissions form at Medical City, which is sufficient to create derivative standing.

"It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim."[13]  "[A] health care provider who has a valid assignment from the plan participant or beneficiary has derivative standing to bring a cause of action to recover benefits from an ERISA-governed [] plan."[14]

The Fifth Circuit held "standing to bring an action founded on ERISA is a jurisdictional matter."[15]  However, the Fifth Circuit also held that where "a case turns on the validity of an assignment of contractual rights, that is not a question of Article III standing but one of contractual standing."[16]  Therefore, a challenge to a plaintiff's right to bring a suit is not a subject-matter issue under Rule 12(b)(1), but rather an inquiry into the merits of a certain claim to be analyzed under Rule 12(b)(6).[17]  A healthcare provider need only allege it obtained an assignment of

---

[13] *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Empl. Health Care*, 426 F.3d 330, 333–34 (5th Cir. 2005).

[14] *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 889 (5th Cir. 2003).

[15] *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006).

[16] *Maxim Crane Works, L.P. v. Zurich Am. Ins.*, 11 F.4th 345, 351 (5th Cir. 2021) (per curium) (cleaned up).

[17] *Id.* at 350.

benefits and rights from each patient to meet the pleading standard regarding standing.[18]

An insurance provider may waive an anti-assignment provision by failing to assert it when negotiating a claim.[19]  Regardless, courts have held that the motion to dismiss stage is "too early in the litigation to determine whether [a party] is estopped from asserting anti-assignment or waiver of its anti-assignment provisions."[20]

Here, Medical City alleges in its complaint that each patient or their legal representative signed a form, called the Conditions of Admission, that includes an assignment of the patient's health insurance benefits.[21]  Notwithstanding Anthem's contentions, the Court does not need to determine the exact nature and scope of the assignments at this stage.[22]  Therefore, taking Medical City's allegations in its complaint as true, the Court finds its allegations plausibly pled an assignment provision exists to confer derivative standing to Medical City through the patients'

---

[18] *North Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp.2d 294, 300–03 (S.D. Tex. 2011) (abrogated on other grounds); *Lone Star 24 HR ER Facility v. Blue Cross Blue Shield of Tex.,* No. SA-22-CV-01090-JKP, 2003 WL 5729947, at *4–5 (W.D. Tex. Sept. 5, 2023).

[19] *St. Davids Healthcare Partnership, L.P., LLP v. Anthem Blue Cross Life and Health Insurance Company*, Case No. 1-23-CV-0591-ADA, at *6 (W.D. Tex. Dec. 27, 2023) (citing *Hermann Hosp. v. MEBA Med. And Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992) (finding when a hospital sued an insurance provider for a disputed payment amount and the insurance provider raised the anti-assignment clause in litigation for the first time, the insurance provider was estopped from arguing the anti-assignment provision rendered the assignment invalid)).

[20] *Id.,* at *7.

[21] Doc. 23 at 11.

[22] *See Texienne Physicians Med. Ass'n, PLLC v. Health Care Serv. Corp.*, 2023 WL 2799726, at *12 (N.D. Tex. April 4, 2023) (Fish, J.) (holding "the court does not need to determine the scope of the assignments" at the 12(b)(1) motion to dismiss stage).

6

signed Conditions of Admission form.  Medical City has sufficiently pled derivative standing, and Anthem's Rule 12(b)(1) motion to dismiss Count III is **DENIED**.

### B. Medical City plausibly pled a claim for breach of contract.

Medical City has plausibly alleged that Anthem breached the Agreement. Although Anthem is a non-signatory to the Agreement, Medical City alleges Anthem is an affiliate of Blue Cross Texas and therefore is bound by the Agreement.

Generally, a contract binds only its signatories.[23]  However, an assignee of benefits under contract may be held liable for obligations under the contract if an express or implied assumption occurred.[24]  Specifically, "[a]n implied assumption of obligations may arise when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched."[25]

Medical City does not allege that Anthem signed the Agreement, but it alleges that Anthem, as an affiliate of Blue Cross Texas, accessed the benefits of the Agreement.  Medical City further alleges that Anthem impliedly assumed the Agreement's obligations by accessing those benefits and agreeing to be bound by its terms.  Although implied assumption is generally disfavored, courts frequently find

---

[23] *BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

[24] *NextEra Retail of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

[25] *Id.* at 226–27 (cleaned up).

it in cases where an out-of-state licensee refuses to pay under a general medical services agreement.[26]

Here, Anthem processed the claims in dispute, made a partial payment for one patient, and communicated with Medical City through Blue Cross Texas pursuant to the Blue Card Program procedures regarding claim denials. Notably, Anthem denied the claims based on alleged lack of medical necessity and failure to obtain preauthorization—not because it was not bound by the Agreement.

At this stage, Anthem's conduct plausibly supports an inference that it impliedly assumed the Agreement's obligations. Accordingly, dismissal is not appropriate. Medical City has plausibly pled a claim for breach of contract, and Anthem's Rule 12(b)(6) motion to dismiss Count I is **DENIED**.

### C. The Court construes Anthem's 12(b)(3) motion as an unopposed motion to compel arbitration.

Anthem requests that, "in the event that Count I survives dismissal under Rule 12(b)(6)" the Court compel arbitration—which the Court construes as a motion to compel arbitration.[27]

A third-party non-signatory may compel arbitration under the doctrine of equitable estoppel when the signatory "raises allegations of substantially

---

[26] *See, e.g., Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 732 (5th Cir. 2018).

[27] Doc. 27 at 15.

interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract."[28]

The parties agree that the Agreement at issue contains a valid arbitration clause, including a delegation clause governing the arbitrability of claims. [29] Anthem invokes the arbitration clause under the doctrine of equitable estoppel.[30]

Because the parties agree that the Agreement contains a valid arbitration clause—including a delegation clause governing arbitrability—and that Medical City's claims arise out of and relate directly to the Agreement, the Court must enforce the arbitration agreement under the Federal Arbitration Act.[31] Accordingly, the Court construes Anthem's Rule 12(b)(3) motion as an uncontested motion to compel arbitration and **GRANTS** it. Because the valid arbitration agreement and delegation clause deprive the Court of jurisdiction to decide the merits of the remaining claims, the Court refrains from analyzing the remaining grounds for dismissal and **DENIES WITHOUT PREJUDICE** the remainder of Anthem's Rule 12(b)(6) motion.

## IV. Conclusion

Accordingly, the Court **DENIES** Anthem's motion to dismiss. The Court **ORDERS** the parties to promptly arbitrate the claims set forth in this matter and

---

[28] *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527–28 (5th Cir. 2000).

[29] "The Agreement under which Plaintiffs sue does contain valid alternative dispute clauses." Doc. 27 at 15. Medical City is "amenable to pursuing arbitration." Doc. 33 at 7.

[30] *Grigson*, 210 F.3d 524, 526.

[31] 9 U.S.C. § 3.

**ORDERS** the parties to update the Court every three months with a status report on the state of arbitration proceedings.

    **IT IS SO ORDERED** this 6th day of January, 2026.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE